| | |
|---|---|
| **Todd J. Taylor** and **Thomas Lahowetz**, on their own behalf and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>**Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.,** and **Anthem Insurance Companies, Inc.**<br><br>Defendants. | CASE NO. 3:23-cv-00541<br><br>Judge William L. Campbell Jr.<br>Magistrate Judge Jeffrey S. Frensley |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR
APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVES, SETTLEMENT
CLASS COUNSEL AND SETTLEMENT ADMINISTRATOR**

The Court, having considered the filings and having heard from counsel and being fully apprised of the considerations, now makes the following **FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER:**

**FINDINGS OF FACT**

This lawsuit arises out of coverage denials for the treatment of prostate cancer. Both named plaintiffs were diagnosed with prostate cancer. Both named plaintiffs were advised to treat the cancer with proton beam radiation therapy. Both named plaintiffs sought coverage from defendants Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. and Anthem Insurance Companies, Inc. Defendants denied coverage to both named

1

plaintiffs because – according to defendants – proton beam radiation therapy is not "medically necessary" for prostate cancer. Both named plaintiffs decided to treat their prostate cancer with proton beam radiation therapy anyway; both named plaintiffs paid for the therapy out-of-pocket.

Plaintiffs contend that there is no material difference between the named plaintiffs and other class members identified by defendants. Plaintiffs contend that, in all cases, class members were diagnosed with prostate cancer. Plaintiffs contend that in all cases, defendants denied coverage for proton beam radiation therapy. Plaintiffs contend that in nearly all cases, the stated basis for denial was that the treatment wasn't medically necessary.

Defendants deny that they acted improperly or wrongfully in any way in denying plaintiffs' requests for proton beam radiation therapy coverage.

Plaintiffs' case theory is that defendants concluded that proton beam radiation therapy is not based on individual treatment considerations but instead based on internal clinical guidelines that are identical and apply across-the-board to all class members. In late 2025, the parties agreed to conduct a mediated negotiation to attempt to resolve this dispute. The parties agreed on Pamela Perry, a well-known Miami-based mediator/arbitrator. The mediation occurred in Miami on January 20, 2026. Plaintiff Tom Lahowetz and counsel appeared in person; Todd Taylor appeared via Zoom. Defendants were represented in-person by counsel; their corporate representative appeared through Zoom. The parties agreed to the principal elements of this settlement by the end of the day. Since that date, the parties have fine-tuned the settlement terms

through drafting and negotiation of the executed settlement agreement attached to plaintiffs' motion.

The parties' settlement is summarized as follows:

- Unopposed certification of a class consisting of the persons identified by defendants in their responses to plaintiffs' discovery and for whom defendants produced claims files.
- The class is defined as: the persons identified by Anthem in discovery in this Action who sought coverage from Anthem for PBRT for prostate cancer but whose treatments were not covered by insurance (by Anthem or otherwise.
- Defendants will create a $3,625,000 common fund. The payment is non-recourse, with the exception of uncashed checks. This common fund will be used to pay for class compensation, attorneys' fees, reimbursement of costs, service awards and claims administration.
- Claims forms are required for class members to participate. The forms require class members to state: a) they were treated by proton beam radiation therapy b) for prostate cancer and c) the treatments were not covered by insurance.
- The formula for class recovery is as follows: $3,625,000 *minus* (attorneys' fees *plus* service awards *plus* cost reimbursement *plus* claims administration) *divided by* participating and eligible class members. Class recovery is capped at actual payment for the prostate radiation treatment service. Class counsel estimates that class members' individual recovery will be between $20,000 to $25,000.
- In exchange for payment, class members will release named defendants and related entities from all legal claims arising out of the denial of coverage for prostate beam radiation therapy. Defendants have the option to terminate the settlement if 10% or more of the 142 class members opt out of the settlement.

### CONCLUSIONS OF LAW

The 6th Circuit "favor[s] settlement of class actions."[1] Indeed, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits

---

[1] *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

3

because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."[2]

Rule 23(e) requires that a class settlement be "fair, reasonable, and adequate." At the preliminary approval stage, under Rule 23(e)(1), the settling parties must provide the Court with "information sufficient to enable it to determine whether to give notice" of the proposed settlement to the class. To decide whether preliminary approval is warranted, the Court must find that it will "likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." A settlement should be preliminarily approved if it (**1**) "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys," and (**2**) "appears to fall within the range of possible approval."[3]

The Court must also evaluate whether the Settlement Class satisfies Rule 23(a) and the relevant provisions of Rule 23(b). Evaluation under Rule 23(a) requires examination of numerosity, commonality, typicality, and adequacy. Rule 23(b)(3), under which plaintiffs are proceeding, evaluates questions of predominance and superiority.

### A.     Certification of the proposed Settlement Class

The settlement contemplates a conditional certification of the following class:

---

[2] *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).
[3] *Garner Props & Mgt., LLC v. City of Inkster,* 333 F.R.D. 614, 621 (E.D. Mich. 2020) (quoting multiple cases).

*The persons identified by Anthem in discovery in this Action who sought coverage from Anthem for PBRT for prostate cancer but whose treatments were not covered by insurance (by Anthem or otherwise). Excluded from the Settlement Class are (i) any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff: (ii) Anthem Counsel, their employees, and their immediate family, (iii) Class Counsel, their employees, and their immediate family, and (iv) any person who validly opts-out of the Settlement Class.*

Though this conditional certification is an element of the settlement, the Court must engage in traditional Rule 23 analysis.

### 1.      *Ascertainability*

Fed. R. Civ. P. 23 presumes the existence of "a definite or ascertainable class."[4] "[A] class must exist," and it must "be susceptible of precise definition."[5] The requirement "focus[es] on the question of whether the class can be ascertained by objective criteria" as opposed to "subjective standards (*e.g.,* a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.,* persons who were discriminated against)."[6] Here, defendants have identified approximately 140 persons who fit the class definition, which dispositively resolves the question of whether the class is ascertainable.

Though not embedded in the text of Rule 23, plaintiffs must also demonstrate individual standing as part of the class certification inquiry.[7] The requirements:

---

[4] 1 Rubenstein, *Newberg on Class Actions* §3:2 (5th ed. 2013).

[5] 5 *Moore's Federal Practice* §23.21[1] (3d ed. 1997).

[6] Newberg, §3:3; *Manual for Complex Litigation* §21.222 (4th ed. 2004).

[7] *Fox v. Saginaw Cnty.,* 67 F.4th 284, 294 (6th Cir. 2023)("First, and most obviously, the Court has held that its usual three-part test for standing applies with full force in the class action context.").

"Plaintiffs must have suffered an injury. They must trace this injury to the defendant. And they must show that a court can redress it."[8]

In this case, the uncontested record is that plaintiffs' health benefit plans were administered by defendants and their requests for coverage for proton beam radiation therapy were denied by defendants in accordance with their clinical guidelines. Both plaintiffs have standing to challenge those denials under the guidelines, and thus have standing to bring their individual ERISA claims.

### 2. *Rule 23(a)(1)-(a)(4)*

To achieve certification, plaintiff must satisfy all four subparts of Rule 23(a).

#### i. <u>Rule 23(a)(1) – Numerosity</u>

Rule 23(a)(1) requires that the class "is so numerous that joinder of all members is impracticable." While there is no strict numerical test, "a class of 40 or more members raises a presumption of numerosity."[9] Here, defendants have identified approximately 140 persons who qualify as class members, which easily surpasses the numerosity threshold.

#### ii. <u>Rule 23(a)(2) – Commonality</u>

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This subpart is satisfied when plaintiffs demonstrate "a common question that will yield a common answer for the class … and that the common answer relates to the

---

[8] *Id.* at 293.
[9] *Pickett v. City of Cleveland,* 2025 U.S. App. LEXIS 14104, *10 (6th Cir. June 9, 2025)(internal citation and quote marks omitted).

actual theory of liability in the case."[10] Here, a single over-arching issue unites the class: Whether defendants' clinical guidelines that resulted in the decision that proton beam radiation therapy was not covered under the relevant health benefit plans breached the promise defendants made to cover "medically necessary" services. "Plaintiffs can show that Defendants caused harm on a general basis if Plaintiffs can show that Defendants applied an incorrect standard in evaluating their claims. In other words, the claimed harm is 'one of process, not outcome,' and therefore harm and causation can be resolved on a class-wide basis."[11]

### iii.    Rule 23(a)(3) – Typicality

Under Rule 23(a)(3), plaintiffs must show that their claims fairly encompass the claims of all unnamed class members.[12] All class members – including the two named plaintiffs – a) sought health insurance to cover proton beam radiation therapy b) for prostate cancer c) whose claims were denied by defendants d) in conformity with defendants' clinical guidelines. Typicality is met.

### iv.    Rule 23(a)(4) – Adequacy

Rule 23(a)(4) requires that plaintiffs demonstrate that the named representatives share common interests with the class members and will vigorously assert those

---

[10] *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).
[11] *Des Roches*, 320 F.R.D. at 499 (quoting *Hart v. Colvin*, 310 F.R.D. 427, 435 (N.D. Cal. 2015)).
[12] *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

interests for all. Further, the rule seeks to "uncover conflicts of interest between named parties and the class they seek to represent."[13]

Plaintiffs have done all that's required in this case. They've personally reviewed all key documents before filing and worked with their lawyers in answering interrogatories and producing documents. They prepared for and then attended and fully participated in a full day mediation. As for their lawyers, they have submitted declarations demonstrating their *bona fides*.

### 3. *Rule 23(b)(3)*

Plaintiffs must also satisfy one of the three subparts of Rule 23(b) to achieve class certification. Here, plaintiffs satisfy Rule 23(b)(3).

To satisfy Rule 23(b)(3), plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23(b)(3) identifies factors relevant to the superiority requirement:

> (A)    the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

---

[13] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

In assessing superiority, courts "look to the purpose of class action litigation," which is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[14] But because this is a settlement class, the Court does not need to consider "[w]hether trial would present intractable management problems."[15]

A class action is the superior method for resolving this case. The common questions of law and fact predominate. And, to the extent any individual Settlement Class member wishes to control the prosecution of their own action, they will have the opportunity to opt-out of the Settlement Class.

**B.      Preliminary approval of the class action settlement**

The Court is also asked to grant the uncontested motion for preliminary approval of the proposed class action settlement. Rule 23(e)(2) sets forth factors the Court must consider:

- the class representatives and class counsel have adequately represented the class;
- the proposal was negotiated at arms'-length;
- the relief provided for the class is adequate, taking into account:
  - the costs, risks, and delay of trial and appeal;
  - the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  - the terms of any proposed award of attorney's fees, including timing of payment; and
  - any agreement required to be identified under Rule 23(e)(3) and
  - the proposal treats class members equitably relative to each other.[16]

---

[14] *Hicks*, 965 F.3d at 463–64

[15] *Amchem*, 521 U.S. at 620.

[16] Fed. R. Civ. P. 23(e)(2)(A)-(D).

The 2018 Advisory Committee Notes make clear, however, that these factors do not displace the "lists of factors" courts have traditionally applied to assess proposed class settlements. While overlapping with many the Rule 23(e) factors, in the Sixth Circuit, these traditional factors include:

- the risk of fraud or collusion
- the complexity, expense and likely duration of the litigation
- the amount of discovery engaged in by the parties
- the likelihood of success on the merits
- the opinions of class counsel and class representatives
- the reaction of absent class members; and
- the public interest.[17]

This Court is not required to consider all these final approval factors at preliminary approval.[18]

### 1.    Rule 23(e)(2)(A) – *Plaintiffs have adequately represented the class*

Plaintiffs and their counsel meet the requirement to "adequately represent [] the class" under Rule 23(e)(2)(A). Plaintiffs, and their lawyers, have done the work this case requires. They defeated a motion to strike class allegations that – if they had lost – would have resulted in a classwide defeat. They carefully studied the tens of thousands of pages produced by defendants. And when an opportunity to negotiate arose, they accepted it believing (correctly) they could deliver meaningful classwide results. This factor strongly supports preliminary approval of the settlement. In addition, plaintiffs

---

[17] *Day v. AMC Corp.*, 2019 U.S. Dist. LEXIS 143021, at *18 (E.D. Ky. July 26, 2019) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009)).
[18] *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *1 (E.D. Tenn. May 7, 2012); *cf. Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020) (observing that while factors vary, "it is clear the bar is lower for preliminary approval than it is for final approval").

and counsel believe the settlement results are in the best interest of the Settlement Class, satisfying the fifth traditional factor, which considers "the opinions of class counsel and class representatives."[19]

### 2. Rule 23(e)(2)(b) – *The settlement resulted from arms'-length negotiation*

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."[20] There is no suggestion that the deal negotiated occurred after anything less than arms'-length negotiation.

### 3. Rule 23(e)(2)(C) – *The relief provided is more than adequate*

#### i. The costs, risks, and delay of trial and appeal

The complexity, cost, and duration of ongoing litigation are significant factors in evaluating settlement fairness, as settlements should reflect a compromise that accounts for the risks, expenses, and delays of continued litigation.[21] "This is especially true of . . . class action litigation, which is unpredictable."[22] Courts favor early class settlements because they enable class members to obtain recovery without unnecessary delay while conserving judicial resources.[23]

---

[19] *Day*, 2019 U.S. Dist. LEXIS 143021, at *22.
[20] *See Peck v. Air Evac EMS, Inc.*, 2019 U.S. Dist. LEXIS 118626, *19-20 (E.D. Ky. July 17, 2019) (quoting *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)).
[21] *Smith v. Specialty Networks LLC,* 2025 U.S. Dist. LEXIS 134484, *13-14 (E.D. Tenn. July 15, 2025).
[22] *Id.* at *14.
[23] *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.").

This case was three years old when it settled, but it had years left to go. The parties had a minimum of six months remaining to complete discovery, which would have been followed by a class certification motion, the results of which would almost certainly been appealed to the 6th Circuit. Once returned, the parties would have then turned to dispositive motion practice, the results of which would – again – almost certainly have been appealed to the 6th Circuit. Cutting short this process with an acceptable settlement argues strongly in favor of approval.

### ii. The effectiveness of proposed method of distributing class relief

The settlement contemplates a straightforward method of distributing class relief. Class members, who are identified through defendants' records, will be required to sign a simple form that confirms a) they received proton beam radiation therapy and b) that they paid out-of-pocket for the service. Neither plaintiffs nor defendants have an independent way of confirming either fact; it is fair and appropriate that the class members prove up those two elements. Once these two elements are shown, class members will be qualified to share in the common fund.

### iii. Rule 23(e)(2)(D) – the settlement treats class members equitably

Consideration under this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."[24] This factor is satisfied. Class members are

---

[24] Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

similarly situated, and under the settlement will be share equally in the common fund (with the limitation that their recovery is capped at their actual treatment payment).

### 4. Traditional class action factors

Of the seven traditional factors, most have already been addressed in connection with the preceding Rule 23(e)(2) analysis: the risk of fraud and collusion is addressed by Rule 23(e)(2)(B); the complexity, expense and likely duration of the litigation is addressed by Rule 23(e)(2)(C)(i); and the amount of discovery engaged in by the parties and the opinions of class counsel and class representatives is addressed above. The sixth traditional factor, "the reaction of absent class members," is premature at the preliminary approval stage because notice has not yet been issued. This factor will be addressed at the final fairness hearing.

Under Fed. R. Civ. 23(c)(2)(B), for any Rule 23(b)(3) class, the Court must direct notice to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.[25] Rule 23(e)(1)(B) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound "[26] Due process also gives unnamed members of a class the right to notice of a class action settlement. Notice must be reasonably calculated to reach interested parties.[27] Due process does not require actual

---

[25] Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).
[26] Fed. R. Civ. P. 23(e)(1)(B).
[27] *Tennille*, 785 F.3d at 436.

notice to each party intended to be bound by the adjudication of the class action.[28] Notice under Rule 23 is generally coextensive with due process.[29]

Here, the parties' proposed notice plan satisfies the federal rules and due process. First, notice will be sent and administered by the Claims Administrator. It will be sent by U.S. mail to all class members. Second, the notice, attached as Exhibit _ to the Settlement Agreement, also satisfies Rule 23 and due process requirements. It provides clear instructions in plain language about the nature of this case, the class definition, the claims and defenses, the right of a class member to appear by counsel, the right to exclusion (and the time/method for doing so), and the effect of a class judgment. It also explains the reasons for seeking a class settlement and the methodology for recovery and sets out important deadlines for Class Members to exercise their rights, along with the benefits of the Settlement and all possible fees and deductions from the Settlement. The notices also direct Class Members to the Settlement website and a toll-free number to obtain additional information.

**C.      Appointment of class administrator and establishing schedule**

Plaintiffs request that Court appoint Verita Global, LLC as the Claims Administrator. Verita Global, LLC has extensive experience with class action claims administration across the country.

The Court is further advised that the parties propose the following schedule:

---

[28] *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120-21 (8th Cir. 1975).
[29] *LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 296 (D.N.M. 2019).

| Event | Cite in Settlement Agreement | Date |
|---|---|---|
| "**Notice Date**" shall mean XX days after the Court enters the Preliminary Approval Order. | p. 5, para. 1.22 | 21 days |
| "**Objection Deadline**" shall mean XX days after Notice Date. | p. 5, para. 1.24 | 45 days |
| "**Opt-Out Deadline**" shall mean XX days after Notice Date. | p. 5, para. 1.26 | 45 days |
| **Settlement Notice:** Within XX days of the entry of the Preliminary Approval Order | p. 9, para. 3.2 | 21 days |
| **Settlement Website:** Within XX days of the entry of the Preliminary Approval Order | p. 10, para. 3.3 | 21 days |
| **Settlement Information Line:** Within XX days of the entry of the Preliminary Approval Order | p. 10, para. 3.4 | Needs to be live the day the notices are mailed |
| **Settlement Amount:** Within XX days of the entry of the Preliminary Approval Order | p. 11, para. 4.1(a) | 7 days |
| …the Settlement Administrator shall return any unused portion of the $XX to Anthem within XX business days. | p. 11, para. 4.1(a) | 14 days |
| Settlement Amount…deposited via wire transfer into the Escrow Account within XX Business Days of entry of the Final Order and Judgment. | p. 11, para. 4.1(b) | 30 days |
| The Settlement Administrator shall disburse the Distributable Settlement Amount…no later than XX days after the Effective Date. | p. 13, 4.2(c) | 60 days |
| **Distribution to Settlement Class Members:** Settlement Class Members must each or otherwise negotiate and present Settlement Payment checks within XX days of issuance. | p. 13, para. 4.2(e) | 180 days |
| **Settlement Class Members** must each or otherwise negotiate and present such reissued checks within XX days of reissuance or those reissued checks will be void. | p. 13, para. 4.2(e) | 60 days |
| **Treatment of Uncashed Checks.** If any Settlement Payment checks are issued and reissued…but remain uncashed XX days after reissuance, then the Settlement Administrator shall within XX days after the check's reissuance date remit the amount of such uncashed | p. 14, para. 4.3 | 60 days after reissuance (stale period); 81 days after check's reissuance (21 days after stale date) |

| | | |
|---|---|---|
| check(s) to Anthem by wire transfer…. | | |
| **Certification of Settlement Administrator**. Within XX Business Days of completing all actions required by paragraphs 4.2 and 4.3 | p. 14, para. 4.4 | 10 days |
| Providing, no later than XX Business Days after the Opt-Out and Objection Deadlines, a final report to Class Counsel and Anthem Counsel that summarizes the number of written Requests to Opt-Out, objections, and other pertinent information as requested by Class Counsel or Anthem Counsel…. | p. 16, para. 5.1(l) | 21 days |
| Any amount awarded by the Court in response to such Fee and Expense Application shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount and paid to Class Counsel within XX Business Days of entry of the Final Approval Order and Judgment. | p. 20, para. 7.1 | 45 days |
| Service Award Application shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount and paid to Class Counsel within XX Business Days of entry of the Final Approval Order and Judgment and then distributed to each Class Representative. | p. 20, para. 7.2 | 45 days |
| **Claims Period**. There will be a claims period that will run for XX days after the Notice Date. | p. 21, para. 8.1 | 120 days |
| Settlement Class Members need to submit a Claim Form, attached hereto as Exhibit A, within XX days of the Notice Date, to be eligible to receive a Settlement Payment. | p. 21, para. 8.2(b) | 120 days |
| **Termination Events.** This Agreement and the Settlement shall terminate and be cancelled if, within XX Business Days after any of the following events, one of the Parties provides written notification of an election to terminate the Settlement. | p. 23, para. 9.2 | 20 days |
| Anthem must notify Class Counsel and the Court of its election to terminate not later than XX days after the Opt-Out Deadline. | p. 24, para. 9.3 | 30 days |

| | | |
|---|---|---|
| Within XX days after receiving the notice described in subparagraph (a), the receiving Party shall respond in writing with its position and the facts and arguments it relies on in support of its position…. | p. 28, 10.11(b) | 30 days |
| For a period of not more than XX days following mailing of the response described in subparagraph (b), the Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute…. | p. 28, 10.11(c) | 7 days |
| Within XX days after the conclusion of the Meditator's attempt to resolve the dispute (the date of the conclusion of the mediation shall be determined by agreement of the parties or by the Mediator); if the dispute persists, either Party may request that the Court resolve the dispute…. | p. 28, 10.11(e) | 30 ays |

### ORDER

The Court now makes the following **ORDER**:

A. **The Court conditionally certifies the following settlement class:**

*The persons identified by Anthem in discovery in this Action who sought coverage from Anthem for PBRT for prostate cancer but whose treatments were not covered by insurance (by Anthem or otherwise). Excluded from the Settlement Class are (i) any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff: (ii) Anthem Counsel, their employees, and their immediate family, (iii) Class Counsel, their employees, and their immediate family, and (iv) any person who validly opts-out of the Settlement Class.*

B. **The Court finds that the proposed settlement satisfies the elements of Fed. R. Civ. P. 23 and further meets the requirements required for preliminary approval of a class action settlement.**

C. **The Court agrees to the retention of Verita Global, LLC as claims administrator.**

D. **The Court adopts the proposed settlement calendar as set forth above.**

**IT IS SO ORDERED.**

**Dated:**

_____
**Chief Judge William L. Campbell**